* * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence or rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
 * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly denominated in the caption.
2. An employee/employer relationship as defined by N.C. Gen. Stat. § 97-2(2) existed between plaintiff and defendant-employer on May 14, 2004.
3. Key Risk Management Services, Inc. insured Craven Regional Medical Center on May 14, 2004.
4. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. All parties are properly before the Industrial Commission and the Commission has jurisdiction over the parties and the subject matter.
6. Plaintiff had an accident on May 14, 2004, when she tripped and fell in the course and scope of her employment with defendant-employer.
7. Plaintiff's average weekly wage as of May 14, 2004 was $738.52.
 * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 60 years old. She is a licensed practical nurse (LPN).
2. Plaintiff worked for defendant-employer from 1965 until 1985 and then again from 1988 until September 14, 2004.
3. Plaintiff worked in the endoscopy unit of defendant-employer, where her duties included helping physicians with procedures, and other related assignments. In performing some of her duties, plaintiff wore a lead apron to protect her from radiation.
4. On May 14, 2004, while working for defendant-employer, plaintiff was walking out of a procedure room when she accidentally caught her toe on a trash can, causing her to trip and fall. Plaintiff landed on her hands and knees.
5. Immediately following the accident, plaintiff completed an accident report and gave it to her manager, Diana Jones. In this report, plaintiff checked boxes indicating that she suffered a "moderate contusion."
6. Plaintiff worked the remainder of the day on May 14, 2004, without incident and did not report to defendant-employer's Employee Health Section or otherwise seek medical treatment.
7. Plaintiff continued to work for defendant-employer without incident through September 14, 2004, requesting and receiving a change to part-time status around the end of June 2004.
8. In March 2000, plaintiff complained to her physician, Dr. Wendy P. Moeller at Eastern Carolina Internal Medicine, about symptoms indicating lumbar radiculopathy. At Dr. Wendy Moeller's recommendation, plaintiff underwent a lumbar CT scan on March 30, 2000, which showed multi-level disk bulging with mild to moderate leftward foraminal stenosis suggested at the L4-5 level. Specifically, the CT scan showed disk bulging at L2-3, L3-4, L4-5 and L5-S1.
9. On December 5, 2000, Dr. Wendy Moeller noted plaintiff's history of having suffered from "chronic low back pain that was felt to be due to degenerative arthritis with mild lumbar radiculopathy."
10. On January 23, 2004, plaintiff again presented to Dr. Wendy Moeller for arthritis complaints. Dr. Wendy Moeller noted that plaintiff had suffered from arthritis for about 10 to 12 years, that "her disease is fairly significant" and that plaintiff's complaints involved her hands, ankles, knees and hips. Dr. Wendy Moeller referred plaintiff to a rheumatologist, Dr. G. Radford Moeller, for further evaluation of her arthritic complaints.
11. Plaintiff presented to Dr. Radford Moeller on March 18, 2004, who diagnosed her with psoriatic arthritis.
12. On May 18, 2004, four days after her May 14, 2004 fall, plaintiff again presented to Dr. Radford Moeller. Plaintiff did not mention her fall or any new back pain or radiculopathy symptoms to Dr. Radford Moeller at the May 18, 2004, examination.
13. During August 2004, plaintiff had two more medical appointments, one with Dr. Wendy Moeller on August 10, 2004, and another with Dr. Radford Moeller on August 17, 2004. Again, she did not mention her fall or any new back pain or radiculopathy symptoms.
14. On September 1, 2004, plaintiff presented to Dr. J. Pete Rowlett for pain in her left buttock with radiation down her left leg, which plaintiff said had been symptomatic for about one and a half weeks. Plaintiff did not mention her May 14, 2004 fall to Dr. Rowlett.
15. On September 2, 2004, plaintiff saw Rebecca Brim, a physician's assistant at East Carolina Orthopaedics. Plaintiff provided a history of "having increasing difficulty with her left low back and leg" for the past three weeks with "a chronic history of low back pain dating back several years." Plaintiff did not mention her May 14, 2004 fall and provided no mechanism of injury. Ms. Brim's impression was that plaintiff suffered from low back pain with left sciatica symptoms and severe degenerative change with scoliotic curvature from L2 through L5.
16. On September 9, 2004, Dr. Wendy Moeller wrote a note stating that plaintiff was having back pain and asking that defendant-employer excuse plaintiff from having to wear the "heavy lead apron" until her symptoms improved.
17. On September 14, 2004, plaintiff followed up with Ms. Brim but again did not mention her fall. Ms. Brim ordered physical therapy and restricted plaintiff from lifting greater than 20 pounds and from wearing the lead apron.
18. On or about September 14, 2004, plaintiff gave Ms. Brim's note to Mary Home, Director of Outpatient Services for defendant-employer, and asked for light-duty work. Defendant-employer did not place plaintiff in a light-duty position, and plaintiff has not worked for defendant-employer since that date.
19. On September 23, 2004, plaintiff underwent a lumbar MRI that showed changes consistent with plaintiff's lumbar scoliosis as well as bulging from the L2-3 through L5-S1 levels.
20. On September 29, 2004, plaintiff again presented to Ms. Brim, with no mention of her May 14, 2004 fall.
21. On or about October 1, 2004, plaintiff filed a claim for short-term disability benefits with defendant-employer, which claim was denied because of plaintiff's part-time status as of her last day of work.
22. On October 20, 2004, upon Ms. Brim's referral, plaintiff presented to Dr. Kurt Voos, an orthopedist with a specialty in spinal surgery, and provided a history of having suffered from lower back and lower extremity pain for one year. Plaintiff again did not mention her fall. Dr. Voos concurred with the scoliosis diagnosis and prescribed a trial of lumbar epidural steroid injections along with continued physical therapy.
23. On October 22, 2004, plaintiff completed a Form 18 and instituted this workers' compensation claim.
24. In January 2005, plaintiff presented to Dr. Wendy Moeller on two occasions but did not mention her fall.
25. On March 14, 2005, plaintiff first mentioned her May 14, 2004, fall to a medical provider when she told Dr. Radford Moeller that she had a workers' compensation claim pending regarding the fall. At this same visit, plaintiff further stated to Dr. Radford Moeller "she really did not start having problems until about a month later, but now is having persistent severe low back pain that is refractory." Plaintiff testified that she was hesitant to report her workers' compensation claim earlier because "I know how workmen's comp. can be and how they handle them." She further testified that she wanted to continue to work.
26. On June 6, 2005, plaintiff again presented to Dr. Voos, showed him a copy of the original accident report, and stated that when she had initially consulted with him on October 20, 2004, she "did not think to report" her May 14, 2004 fall. Plaintiff further reported that "prior to her injury she did not have any problems with her back and initially following the injury she . . . had some aches and pains in her lower back but the pain persisted." Dr. Voos noted that it was "possible" that her pain resulted from the May 14, 2004 fall.
27. On June 9, 2005, plaintiff told Dr. Wendy Moeller that she was suffering "minimally with her back."
28. On July 27, 2005, plaintiff presented to Dr. Donald D. Getz, a board certified orthopedic surgeon with a specialty in spinal surgery, for an evaluation. Dr. Getz opined that there was no causal relationship between the May 14, 2004, fall and plaintiff's then-current symptoms.
29. Dr. Voos testified that the May 14, 2004 fall "could" have aggravated plaintiff's pre-existing back condition. However, Dr. Voos could not testify as to whether the fall caused plaintiff's symptoms for which she began seeking treatment on or about September 1, 2004.
30. The Full Commission finds that plaintiff's assertion that she did not pursue a workers' compensation claim earlier because she was concerned about how defendant-employer would respond is not credible, particularly given that she did not mention her May 14, 2004 fall to a medical provider until 10 months after it occurred.
31. The greater weight of the competent evidence of record reveals, and the Full Commission finds as fact, that plaintiff's May 14, 2004 fall was not the cause of any of the back symptoms of which plaintiff later complained and that it did not aggravate plaintiff's pre-existing back/leg condition.
32. The Full Commission further finds that none of the medical treatment that plaintiff has received since May 14, 2004 has been causally related to her May 14, 2004 fall and that plaintiff's inability to work, if any, at any point after May 14, 2004 has not been and is not related to her May 14, 2004 fall.
33. Plaintiff's claim has not been brought or prosecuted without reasonable grounds.
 * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Industrial Commission is the sole judge of the credibility of the evidence. The Commission may accept or reject the testimony of a witness, entirely or in part, and is not required to accept even the uncontradicted testimony of a witness. Gaddy vs. Kern,17 N.C.App. 680, 195 S.E.2d 141 (1973). The Commission decides the weight to be given to a witness's testimony and may reject such testimony completely if warranted by the disbelief of that witness.Jarvis v. Food Lion, Inc., 134 N.C. App. 363,517 S.E.2d 388 (1999).
2. Plaintiff has failed to prove by the greater weight of the evidence that she sustained a compensable injury by accident or specific traumatic incident as a result of the work assigned on or about May 14, 2004, or at any other time. Causby v. Bernhardt Furniture Co.,83 N.C. App. 650; 351 S.E.2d 106 (1986). Further, plaintiff has not shown that the fall accelerated or aggravated her pre-existing back/leg condition. Consequently, plaintiff did not sustain an injury by accident arising out of and in the course of the employment on 29 July 2003 and as such, is not entitled to compensation under the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
3. Defendants are not entitled to attorney's fees or costs under N.C. Gen. Stat. § 97-88.1.
 * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim for benefits must be and is hereby denied.
2. Defendants' claim for attorney's fees and or costs under N.C. Gen. Stat. § 97-88.1 is hereby denied.
3. Each side shall pay its own costs.
This the ___ day of November 2006.
 S/______________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_______________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ BUCK LATTIMORE CHAIRMAN